1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 12, 2020

SEAN F. McAVOY, CLERK

4

5

**UNITED STATES DISTRICT COURT**

6

**EASTERN DISTRICT OF WASHINGTON**

7

| | |
|---|---|
| GREGORY T.,[1] | No. 1:19-cv-03116-MKD |
|            Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | |
|            Defendant. | ECF Nos. 14, 15 |

8

9

10

11

12

13

14

_____

15

[1] To protect the privacy of plaintiffs in social security cases, the undersigned

16

identifies them by only their first names and the initial of their last names. *See*

17

LCivR 5.2(c).

18

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration.

19

Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R.

20

Civ. P. 25(d).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 14, and denies Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

ORDER - 2

1    In reviewing a denial of benefits, a district court may not substitute its

2  judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

3  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

4  rational interpretation, [the court] must uphold the ALJ's findings if they are

5  supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

6  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

7  ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless

8  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

9  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

10  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

11  *Sanders*, 556 U.S. 396, 409-10 (2009).

12                    **FIVE-STEP EVALUATION PROCESS**

13    A claimant must satisfy two conditions to be considered "disabled" within

14  the meaning of the Social Security Act.  First, the claimant must be "unable to

15  engage in any substantial gainful activity by reason of any medically determinable

16  physical or mental impairment which can be expected to result in death or which

17  has lasted or can be expected to last for a continuous period of not less than twelve

18  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

19  "of such severity that he is not only unable to do his previous work[,] but cannot,

20  considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

1   enumerated impairments, the Commissioner must find the claimant disabled and

2   award benefits.  20 C.F.R. § 416.920(d).

3        If the severity of the claimant's impairment does not meet or exceed the

4   severity of the enumerated impairments, the Commissioner must pause to assess

5   the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6   defined generally as the claimant's ability to perform physical and mental work

7   activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8   416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9        At step four, the Commissioner considers whether, in view of the claimant's

10  RFC, the claimant is capable of performing work that he or she has performed in

11  the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

12  capable of performing past relevant work, the Commissioner must find that the

13  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

14  performing such work, the analysis proceeds to step five.

15       At step five, the Commissioner considers whether, in view of the claimant's

16  RFC, the claimant is capable of performing other work in the national economy.

17  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

18  must also consider vocational factors such as the claimant's age, education and

19  past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

20  adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 26, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of January 26, 2015.  Tr. 129, 230-35.  The application was denied initially, and on reconsideration.  Tr. 151-59; Tr. 163-73.  Plaintiff appeared before an administrative law judge (ALJ) on February 1, 2018.  Tr. 62-87.  On June 13, 2018, the ALJ denied Plaintiff's claim.  Tr. 13-30.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 26, 2015.  Tr. 19.  At step two, the ALJ found that Plaintiff has the following severe impairments: malingering; history of post-traumatic stress disorder (PTSD); history of attention

ORDER - 6

deficit hyperactivity disorder (ADHD); anxiety disorder; personality disorder;

history of autism spectrum disorder; chronic lumbar sprain; right knee

patellofemoral syndrome; and obesity.  Tr. 19.  At step three, the ALJ found

Plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of a listed impairment.  Tr. 19.  The ALJ then

concluded that Plaintiff has the RFC to perform light work with the following

limitations:

> [H]e is able to stand and walk for 5 hours in an 8-hour day, and sit for
> 6 of 8 hours; he can lift and/or carry 20 pounds occasionally and 10
> pounds frequently; he is able to perform unskilled, repetitive, routine
> work; he cannot have contact with the public; can have occasional
> contact with supervisors and co-workers; he will be off-task at work
> up to 5% of the time, but still meet minimum production
> requirements; he will be absent from work 6 times per year; he can
> occasionally stoop, squat, crouch, crawl, kneel, as well as climb ramps
> and stairs; he can never climb ladders, ropes, or scaffolds.

Tr. 21.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 25.  At

step five, the ALJ found that, considering Plaintiff's age, education, work

experience, RFC, and testimony from the vocational expert, there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as marker, assembler production, and inspector hand packager.  Tr. 25.

Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the

ORDER - 7

Social Security Act, from the date of the application through the date of the

decision.  Tr. 26.

On March 29, 2019, the Appeals Council denied review of the ALJ's

decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him supplemental security income benefits under Title XVI of the Social Security

Act.  He raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ conducted a proper step-two analysis;

3.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

4.  Whether the ALJ properly evaluated lay witness evidence; and

5.  Whether the assessed RFC is consistent with disability.

ECF No. 14 at 2.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the medical opinions of

examining physicians R. A. Cline, Psy. D., and Thomas Genthe, Ph.D.,

nonexamining physician R. Renee Eisenhauer, Ph.D., treating therapist Dave

ORDER - 8

Hulslander, M.S., and the State agency psychological consultants.  ECF No. 14 at 6-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

ORDER - 9

1  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

2  may only reject it by providing specific and legitimate reasons that are supported

3  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

4  F.3d 821, 830-31 (9th Cir. 1995)).

5      *1. Dr. Cline & Dr. Genthe*

6      Dr. Cline performed two psychiatric evaluations. *See* Tr. 552-56; Tr. 561-

7  66. In November 2014, she diagnosed Plaintiff with PTSD and personality

8  disorder with features of borderline and avoidant personality disorders. Tr. 552.

9  She opined no marked limitations, but opined moderate limitations in the following

10  areas: understanding, remembering, and persisting in tasks by following detailed

11  instructions; performing activities within a schedule; maintaining regular

12  attendance/punctuality without special supervision; making simple work-related

13  decisions; being aware of normal hazards and taking precautions; asking simple

14  questions/requesting assistance; communicating and performing effectively in a

15  work setting; completing a normal workday/workweek; maintaining appropriate

16  behavior in a work setting; and setting goals and planning independently. Tr. 554.

17  She concluded Plaintiff would be impaired for six months. Tr. 555.

18      In July 2017, Dr. Cline performed a second evaluation. Tr. 561-66. She

19  again diagnosed PTSD and personality disorder (with features of cluster B

20  disorders), but also diagnosed Plaintiff with major depressive disorder (severe,

chronic) and unspecified anxiety related disorder.  Tr. 563.  She noted his

maladaptive personality traits and depressed mood were of marked severity and his

anxiety and trauma related symptoms were of moderate severity.  Tr. 563.  In

contrast with her 2014 evaluation, she found his combined symptoms would cause

marked impairments in communicating and performing effectively and

maintaining appropriate behavior in a work setting.  Tr. 564.  Her findings as to his

moderate impairments otherwise remained the same.  Tr. 564.  She opined he

needed treatment focused on his personality characteristics, concurrent with

medication, and that his marked mental impairments would likely persist for 9-12

months.  Tr. 564.

　　　Dr. Genthe performed a psychiatric evaluation in July 2015.  Tr. 317-26.  He

similarly diagnosed Plaintiff with persistent depressive disorder with intermittent

major depressive episodes, PTSD, personality disorder with borderline features,

and alcohol use disorder (in sustained remission).  Tr. 319.  He noted Plaintiff

presented with social anxiety, Tr. 320, and an anxious and depressed affect.  Tr.

321.  He opined marked limitations in the following basic work activities: asking

simple questions or requesting assistance; communicating and performing

effectively in a work setting; maintaining appropriate behavior in a work setting;

and completing a normal workday/workweek.  Tr. 319-20.  He opined moderate

limitations in understanding, remembering, and persisting in tasks by following

1  detailed instructions; adapting to changes in a work setting; and setting realistic

2  goals and planning independently.  Tr. 319-20.  He noted Plaintiff had average

3  reasoning abilities on verbal tasks, but significantly lower (borderline range) non-

4  verbal reasoning abilities and a limited ability (borderline range) to sustain

5  attention, concentrate, exert mental control, and process simple visual material

6  without making errors.  Tr. 320.  He also noted Plaintiff had poor insight on

7  clinical issues, poor decision-making skills regarding treatment, and poor social

8  cognition.  Tr. 322.  Overall, he determined Plaintiff's combined symptoms

9  "continue to impact his daily activities and level of functioning" so that he would

10  be "unlikely to function adequately in a work setting" without better management

11  of his symptoms.  Tr. 320.  Dr. Genthe concluded "no less than 6-9 months" would

12  be needed to address Plaintiff's impairments.  Tr. 320.

13      The ALJ gave little weight to the opinions of Dr. Cline and Dr. Genthe.  Tr.

14  24.  Because the doctors' opinions were contradicted by those of the state

15  psychological consultants, the ALJ was required to provide specific and legitimate

16  reasons for rejecting the opinions.  *See Bayliss*, 427 F.3d at 1216.

17      Here, the ALJ found the opinions were inconsistent with the "apparent

18  improvement" in Plaintiff's symptoms.  Tr. 24.  The effectiveness of medication

19  and treatment is a relevant factor in determining the severity of a claimant's

20  symptoms.  20 C.F.R. § 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*,

ORDER - 12

439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits). The ALJ noted Plaintiff reported a positive response to medication on several occasions.  Tr. 22.  In support of her finding, she cited two records indicating Plaintiff reported Zoloft helped "stabilize" him in July 2015, Tr. 317, and that "he [was] doing better on 100 mg Zoloft" in November 2016.  Tr. 576.  She cited a third record, however, it fails to support her finding; the record indicates Plaintiff utilizes trazadone and a CPAP machine to help him sleep, but also notes he "wakes up in the middle of the night with massive headaches," he cannot wear his CPAP machine throughout the night, and "he has been on multiple sleep meds without success."  Tr. 572.  Additionally, the ALJ emphasized Plaintiff stopped attending therapy because his symptoms had improved.  Tr. 23 (citing Tr. 659).  In fact, the treatment note referenced states, "Client reports he needs to take a break from therapy to get his 'mind clear' he reports he thinks taking a break and coming back will be more effective helping him deal with his depression issues."  Tr. 659. Notes from two preceding sessions state that Plaintiff "does not feel like therapy is helpful…he reports he needs to take a break the[n] come back in a few months when he feels ready to address his struggles," Tr. 661, and "client is struggling to make progress toward goals."  Tr. 663.  Accordingly, while Plaintiff denied having suicidal thoughts and reported some improvement (started to be more self-

1  sufficient engaging in daily routine, healthier eating, and more socialization)

2  before halting treatment temporarily, both he and his therapist appeared to agree

3  that therapy had not improved his symptoms as the ALJ concluded.

4          Although two of the reports cited indicate Plaintiff reported some

5  improvement in his anxiety/depression symptoms with Zoloft, the ALJ relied on

6  these limited statements to conclude more broadly that Plaintiff's condition overall

7  improved with treatment.  Tr. 23.  The ALJ's conclusion of general improvement

8  is not supported by substantial evidence.  Observations of improvement must be

9  "read in context of the overall diagnostic picture" of an individual, and

10  improvement in some symptoms does not indicate nondisability under the Social

11  Security Act.  *Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (quoting

12  *Holohan*, 246 F.3d at 1205).  The ALJ is not permitted to "cherry pick" from

13  mixed evidence to support a denial of benefits.  *Garrison v. Colvin*, 759 F.3d 995,

14  1017 n.23 (9th Cir. 2014).  Although Plaintiff's symptoms may have subsided with

15  medication, the record shows his overall condition was not improving with

16  treatment.  *See* Tr. 342, 353 (Jan. 29, 2015 – reported anxiety was worsening and a

17  PHQ-9 score of 18); Tr. 340 ( Feb. 10, 2015 – reported symptoms are somewhat

18  relieved by meds, but after several days he is an "emotional roller coaster" again);

19  Tr. 473-74 (March 1, 2015 – admitted into crisis bed for stabilization); Tr. 466

20  (March 23, 2015 – reported passing suicidal thoughts and a PHQ-9 score of 18);

ORDER - 14

Tr. 454 (June 16, 2015 – forlorn, self-defeating, negative, hopeless mood and affect, and a PHQ-9 score of 20); Tr. 433 (Oct. 26, 2015 – client "stuck between being tired of waiting for SSI Disability and being fed up with living in abject poverty;" PHQ-9 score of 17); Tr. 407 (March 8, 2016 – despondent mood and flat affect, discouraged at lack of progress); Tr. 397 (May 5, 2016 – lack of progress with depression symptoms and a PHQ-9 score of 16); Tr. 488-91 (July 26, 2016 – admitted to crisis bed for stabilization); Tr. 701 (Sept. 29, 2016 – PHQ-9 score of 17); Tr. 698 (Dec. 20, 2016 – PHQ-9 score of 19); Tr. 687 (Feb. 7, 2017 – presented as long-term patient due to lack of progress; PHQ-9 score of 14); Tr. 667 (June 19, 2017 – not making progress toward goals); Tr. 569-70 (Sept. 20, 2017 – difficulty sleeping worsening, meds eventually fail to help, anxious and depressed). Consequently, the ALJ's general conclusion of "apparent improvement" with treatment was not supported by substantial evidence. This was not a specific and legitimate reason to reject the opinions.

The ALJ also found the opinions of Dr. Cline and Dr. Genthe were "not consistent with the claimant's reports to his therapist." Tr. 24. In particular, she referenced Plaintiff's initial assessment note for therapy where he had reported "no one would hire him, he has no skills, he has no people skills, he has no idea what kind of work he could do." Tr. 659. "The ALJ must do more than state conclusions. [She] must set forth [her] own interpretations and explain why they,

ORDER - 15

rather than the doctors' are correct." *Garrison*, 759 F.3d at 1012 (internal citations omitted); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) ("[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion.").  Here, the ALJ failed to include any explanation as to how the single statement made by Plaintiff to his treating therapist contradicts the opinions and specific limitations opined by Dr. Genthe and Dr. Cline.  The ALJ's conclusory statement does not constitute a specific and legitimate reason to reject the opinions.

Finally, the ALJ found Plaintiff's "cessation of medications treatment" was inconsistent with the doctors' opinions.  Tr. 24.  A medical opinion may be rejected if it is unsupported by medical findings, *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), or unsupported by the record as a whole.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ noted that Plaintiff testified he stopped taking his prescribed medication about a year ago (i.e., around February 2017).  Tr. 22 (citing Tr. 70).  When asked why he stopped taking the medication, the ALJ noted he had varied responses, including "he did not like mind altering medications," "it was hard to take medications due to forgetfulness," and "the medication did not work."  Tr. 22 (citing Tr. 69-71).  The ALJ also noted that Plaintiff admitted he deliberately stopped taking medications because he would rather feel miserable.  Tr. 23.  Throughout her discussion, the

ORDER - 16

1   ALJ did not consider Plaintiff's reports of side-effects.  *See* Tr. 336, 339 (Zoloft

2   gives him headaches); Tr. 572 (Trazadone gives him headaches).  She concluded

3   Plaintiff's cessation of prescribed medication was inconsistent with the limitations

4   opined by Dr. Genthe and Dr. Cline.  Tr. 24.

5         It is unclear in what way the ALJ found Plaintiff's "cessation of medication"

6   to be inconsistent with the medical opinions.  To the extent she found

7   inconsistency due to non-compliance with recommended or prescribed treatment,

8   such a finding is not a specific or legitimate reason to discount the opinions.  *See*

9   *e.g., Roland v. Colvin*, 2016 WL 3912015 (E.D. Cal. July 18, 2016) (consistent

10  non-compliance with medications was not specific and legitimate reason to give

11  only limited weight to medical opinion); *Green v. Astrue*, 2011 WL 782390 (C.D.

12  Cal. Feb. 25, 2011) (reported non-compliance does not constitute a specific and

13  legitimate reason for rejecting opinion of treating physician where symptom of

14  significant mental health problem); *c.f., Brown v. Barnhart*, 390 F.3d 535, 540-541

15  (8th Cir. 2004) (holding that the ALJ properly discounted treating physician's

16  opinion where record showed the Plaintiff was non-compliant with prescribed

17  treatment without good reason).  To the extent she found Plaintiff's cessation in

18  medication to be synonymous with improvement, that neither is a specific and

19  legitimate reason.  As discussed *supra*, Plaintiff's reports that his medication

20  helped mitigate his symptoms did not support an overall conclusion that his

ORDER - 17

conditions had generally improved to globally contradict the doctors' opined limitations.  Moreover, to the extent the medications mitigated particular symptoms related to his depression or anxiety, the ALJ did not explain where the contradictions lie between the mitigated symptoms and the limitations opined by Dr. Genthe and Dr. Cline.  The ALJ did not address that Dr. Cline acknowledged Plaintiff was not taking medication in both her evaluations, Tr. 552, 562, and that Dr. Genthe noted Plaintiff's "current medication management regimen does not appear to be adequately targeting interfering symptoms," and recommended "a psychiatric consultation to review his regimen and doses for effectiveness."  Tr. 320.  The ALJ failed to set forth a detailed and thorough summary of the facts and conflicting clinical evidence to support her assertion that Plaintiff's cessation of medication was inconsistent with the doctors' opinions; thus, this was not a specific and legitimate reason to reject them.

Overall, the ALJ did not provide specific and legitimate reasons supported by substantial evidence to discount the opinions of the examining doctors, Dr. Cline and Dr. Genthe, in favor of the State agency psychological consultants.

### 2. Dr. Eisenhauer

In November 2014, Dr. Eisenhauer reviewed the medical report of Dr. Cline (2014 evaluation), and two doctors whose reports were included in Plaintiff's prior case only.  Tr. 557.  She determined Dr. Cline's diagnoses and opined limitations

were supported by the medical evidence.  Tr. 557.  In August 2015, Dr. Eisenhauer

again reviewed the medical report of Dr. Cline (2014 evaluation), as well as that of

Dr. Genthe (2015 evaluation).  Tr. 327 (duplicate at Tr. 559).  She found both

doctors' diagnoses were supported by the medical evidence.  Tr. 330.  She

determined the severity and functional limitations were supported by the medical

evidence, except for Dr. Genthe's finding that Plaintiff had a marked limitation in

his ability to ask simple questions or request assistance; Dr. Eisenhauer

determined, based on the evidence, Plaintiff would only have a mild limitation in

that area.  Tr. 330.

It is unclear how much weight the ALJ gave to Dr. Eisenhauer's opinions.

While it appears the ALJ gave great weight to Dr. Eisenhauer's statement that

Plaintiff "reports improvement in his condition," and "spends time with friends,"

as a result of his therapy and medication, Tr. 23; Tr. 559, she ultimately gave "little

weight to the DSHS evaluations," including Dr. Eisenhauer's reviews.  Tr. 24.  The

statement referenced by the ALJ is contained in Dr. Eisenhauer's second review.

Tr. 559.  As elucidated by Plaintiff, the ALJ misinterpreted the review to have

generally concluded that Dr. Cline's and Dr. Genthe's opined limitations were not

supported by medical evidence.  Tr. 23.  However, the record shows Dr.

Eisenhauer found only that there was insufficient medical evidence to support the

doctors' assessed limitation regarding Plaintiff's ability to ask simple questions or

request assistance.  Tr. 559.  The ALJ provides the same three reasons, i.e.,

inconsistency with Plaintiff's improvement with treatment, inconsistency with

Plaintiff's reports to his therapist, and inconsistency with Plaintiff's cessation of

medication, to reject Dr. Eisenhauer's reviewing opinions.  Tr. 24.  As discussed

above, those reasons do not constitute specific and legitimate reasons to reject the

opinions.

### 3.  Other Medical Opinions

The ALJ also rejected the opinion of treating therapist Dave Hulslander,

who is considered a nonacceptable medical source, *see* 20 C.F.R. § 416.902

(2011)[3] (citing to 20 C.F.R. § 416.913(a)) (acceptable medical sources are licensed

physicians, licensed or certified psychologists, licensed optometrists, licensed

podiatrists, and qualified speech-language pathologists)), finding it was

inconsistent with Plaintiff's improvement with treatment and was inconsistent with

the assessments of the State psychological consultants, whose opinions she gave

---

[3] This section was amended in 2017, effective March 27, 2017, and in 2018,

effective October 15, 2018.  *See* 20 C.F.R. § 416.902.  Plaintiff filed his claim

before March 27, 2017, and the Court applies the regulation in effect at the time

Plaintiff's claim was filed.  *See* 20 C.F.R. § 416.902 (noting changes apply only for

claims filed on or after March 27, 2017).

ORDER - 20

1  great weight.  Tr. 24.  She gave great weight to the consultants' opinion that

2  Plaintiff's condition had not worsened since the first ALJ's decision.  Tr. 24.  As

3  discussed at length above, Plaintiff's "apparent improvement" is not supported by

4  substantial evidence and therefore is not a germane reason to reject Mr.

5  Hulslander's opinion.  *Ghanim*, 763 F.3d at 1161 ("An ALJ may reject the opinion

6  of a nonacceptable medical source by giving reasons germane to the opinion.").

7  Because the case is remanded for the ALJ to reweigh the medical opinion

8  evidence, this opinion should be reweighed as well.

9  **B. Step Two Analysis**

10  Plaintiff contends the ALJ erred by adopting the prior ALJ's findings of

11  medically determinable impairments without properly reviewing the new evidence.

12  ECF No. 14 at 4.  At step two of the sequential process, the ALJ must determine

13  whether the claimant suffers from a "severe" impairment, i.e., one that

14  significantly limits his physical or mental ability to do basic work activities.  20

15  C.F.R. § 416.920(c).  When a claimant alleges a severe mental impairment, the

16  ALJ must follow a two-step "special technique" at steps two and three.  20 C.F.R.

17  § 416.920a.  First, the ALJ must evaluate the claimant's "pertinent symptoms,

18  signs, and laboratory findings to determine whether [he or she has] a medically

19  determinable impairment."  20 C.F.R. § 416.920a(b)(1).  Second, the ALJ must

20  assess and rate the "degree of functional limitation resulting from [the claimant's]

ORDER - 21

impairments" in four broad areas of functioning: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(b)(2)-(c)(4).  Functional limitation is measured as "none, mild, moderate, marked, and extreme."  20 C.F.R. § 416.920a(c)(4).  If limitation is found to be "none" or "mild," the impairment is generally considered to not be severe.  20 C.F.R. § 416.920a(d)(1).  If the impairment is severe, the ALJ proceeds to determine whether the impairment meets or is equivalent in severity to a listed mental disorder.  20 C.F.R. § 416.920a(d)(2)-(3).

Here, the ALJ found the following severe impairments, which are now disputed by Plaintiff: malingering; history of PTSD; and history of ADHD.  Tr. 19 (additional undisputed severe impairments included anxiety disorder, personality disorder, history of autism spectrum disorder, chronic lumbar sprain, right knee patellofemoral syndrome, and obesity).  The ALJ noted that she adopted the severe impairments and the RFC from the prior decision (rendered on Nov. 25, 2014) after she determined that the new evidence did not show "changed circumstance material to the determina[tion] of disability."  Tr. 24.  Plaintiff argues that the ALJ erroneously relied on a diagnosis of malingering from evidence not in the record while rejecting opinions from examining doctors who indicated Plaintiff's participation minimized the likelihood that he was malingering.  ECF No. 14 at 4-5; ECF No. 16 at 3-4.  Plaintiff asserts that the ALJ's error was harmful because it

ORDER - 22

1    had a "clear and detrimental impact on the credibility analysis."  ECF No. 14 at 6.

2        The Court finds *Jones v. Berryhill* instructive.  No. C16-5911-RSM, 2017

3    WL 3614252, at *7 (W.D. Wash. Aug. 23, 2017).  In *Jones*, the ALJ included

4    malingering as a severe medically determinable impairment, as was done here.  *Id*.

5    The court in *Jones* noted:

6        It is unclear why the ALJ included malingering as a severe
        impairment at step two. "The essential feature of malingering is the
7        intentional production of false or grossly exaggerated physical or
        psychological symptoms, motivated by external incentives such as
8        avoiding military duty, avoiding work, obtaining financial
        compensation, evading criminal prosecution, or obtaining drugs."
9        American Psychiatric Association, *Diagnostic and Statistical Manual
        of Mental Disorders* ("DSM-5"), at 726 (5th ed. 2013). By its terms,
10       malingering would seem to be the opposite of a severe impairment,
        which is defined as a medically determinable impairment which
11       significantly limits the claimant's physical or mental ability to do
        basic work activities. 20 C.F.R. § 404.1520(c).

12

13   *Id*.  But, the court in *Jones* determined, "even if the ALJ mistakenly included

14   malingering as a severe impairment at step two, there is significant evidence of

15   malingering in the record which the ALJ was entitled to consider in evaluating Mr.

16   Jones' symptom testimony and the medical evidence."  *Id*.  Despite its finding that

17   there was substantial evidence of malingering,[4] the court in *Jones* instructed the

18   _____

19   [4] The substantial affirmative evidence of malingering determined by the ALJ

20   included: statements by Matthew A. Radel, PAC, that Mr. Jones' medical record

ORDER - 23

ALJ to clarify her finding with respect to malingering on remand, particularly in light of her reconsideration of the medical opinion evidence. *Id.*

Here, the Court similarly finds reconsideration of the ALJ's finding on malingering appropriate on remand. While throughout her opinion the ALJ alludes to evidence that Plaintiff is exaggerating symptoms for secondary gain, the evidence that the ALJ relies upon is not in the instant record and, thus not able to be reviewed by the Court. This renders it impossible for the Court to review the legal sufficiency of the ALJ's finding. Moreover, the ALJ's conclusion must be

_____

suggests malingering type behavior and that his behavior during the visit suggested more of a malingering etiology and narcotic abuse potential; significant manipulative narcotic and benzodiazepine seeking behavior throughout the record, including numerous ER visits for various accidents and ailments resulting in unremarkable physical examination findings, as well as multiple accounts of having simultaneous pain medication prescriptions with different providers; characterizations by several providers of Mr. Jones as being heavily addicted to pain medication and engaging in manipulative drug seeking behavior; and Mr. Jones' own acknowledgment during the hearing that he has fabricated injuries in order to obtain pain medication. *See Jones*, No. C16-5911-RSM, 2017 WL 3614252, at *7.

ORDER - 24

clarified upon her reevaluation of the medical opinion evidence, particularly in light of Dr. Cline's statements that Plaintiff's "excellent effort and cooperation with the task minimizes the likelihood that he is malingering at this time," Tr. 553, 556, and Dr. Genthe's statements that Plaintiff "appear[ed] relatively genuine in his responses," and "appeared attentive and interested in doing his best," so that test results were deemed a "valid assessment of his cognitive functioning." Tr. 321; *see also* Tr. 320 (Dr. Genthe opining Plaintiff has problematic personality traits that limit treatment interventions); Tr. 563 (Dr. Cline noting presence of personality traits of cluster B and cluster C personality disorders).

Plaintiff also asserts the ALJ erred by listing his PTSD as a historical impairment when it was diagnosed by both Dr. Genthe and Dr. Cline and concurred with by Dr. Eisenhauer. ECF No. 14 at 5; *see* Tr. 553 (diagnosing PTSD in Nov. 2014); Tr. 319 (diagnosing PTSD in July 2015); Tr.563 (symptoms consistent with diagnosis of PTSD in July 2017); Tr. 557, 559 (diagnosis of PTSD found to be supported by medical evidence in Nov. 2014 and Aug. 2015). The ALJ should address this issue on remand.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims. ECF No. 14 at 18-21; ECF No. 16 at 8-10. An ALJ engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [his] impairment could reasonably be

expected to cause the severity of the symptom [he] has alleged; [he] need only

show that it could reasonably have caused some degree of the symptom."  *Vasquez*

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim*, 763 F.3d at 1163 (citations omitted).  General findings are

insufficient; rather, the ALJ must identify what symptom claims are being

discounted and what evidence undermines these claims.  *Id*. (quoting *Lester*, 81

F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain

why it discounted claimant's symptom claims)).  "The clear and convincing

[evidence] standard is the most demanding required in Social Security cases."

*Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278

F.3d 920, 924 (9th Cir. 2002)).

ORDER - 26

1    Factors to be considered in evaluating the intensity, persistence, and limiting

2    effects of a claimant's symptoms include: (1) daily activities; (2) the location,

3    duration, frequency, and intensity of pain or other symptoms; (3) factors that

4    precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and

5    side effects of any medication an individual takes or has taken to alleviate pain or

6    other symptoms; (5) treatment, other than medication, an individual receives or has

7    received for relief of pain or other symptoms; (6) any measures other than

8    treatment an individual uses or has used to relieve pain or other symptoms; and (7)

9    any other factors concerning an individual's functional limitations and restrictions

10   due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

11   416.929 (c).  The ALJ is instructed to "consider all of the evidence in an

12   individual's record," "to determine how symptoms limit ability to perform work-

13   related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

14   Here, the ALJ found Plaintiff's medically determinable impairments could

15   reasonably be expected to produce some of the symptoms alleged, but Plaintiff's

16   statements concerning the intensity, persistence and limiting effects of these

17   symptoms were not entirely consistent with the medical evidence and other

18   evidence in the record.  Tr. 24.  The ALJ's evaluation of Plaintiff's symptom

19   claims and the resulting limitations relies in part on the ALJ's assessment of the

20   medical evidence.  Having determined a remand is necessary to readdress the

ORDER - 27

medical source opinions, any reevaluation must necessarily entail a reassessment

of Plaintiff's subjective symptom claims.  Thus, the Court need not reach this issue

and on remand the ALJ must also carefully reevaluate Plaintiff's symptom claims

in the context of the entire record.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th

Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we

decline to reach [plaintiff's] alternative ground for remand.").

**D. Other Assignments of Error**

Plaintiff also challenges the ALJ's evaluation of the lay witness testimony

and argues that the ALJ's adopted RFC equates to disability.  ECF No. 14 at 3-4,

17-18; ECF No. 16 at 2-3, 11.  Because this case is remanded for the ALJ to

reconsider the medical opinion evidence, step two findings, and Plaintiff's

symptom testimony, and because these challenges are influenced by those findings,

the Court declines to address these specific assignments of error in this Order.

**E. Remand**

Plaintiff urges this Court to fully credit the challenged evidence in this case.

ECF No. 14 at 13; ECF No. 16 at 7.  "The decision whether to remand a case for

additional evidence, or simply to award benefits is within the discretion of the

court."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v.

Heckler*, 761 F.2d 530 (9th Cir. 1985)).  When the Court reverses an ALJ's

decision for error, the Court "ordinarily must remand to the agency for further

proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, further proceedings are necessary as the record presents outstanding conflicts to resolve. For instance, even if the Court were to fully credit every opinion in the record stating Plaintiff is incapable of work, the record contains

other opinions from Dr. Lewis, Tr. 123-25, and Dr. Kesler, Tr. 141-42, who opined

Plaintiff had functional limitations consistent with light work; the ALJ must

resolve conflicts in the medical evidence on remand. Moreover, the ALJ must

reassess the findings at step two and the credibility of Plaintiff's subjective

symptom testimony. On remand, the ALJ is instructed to reconsider the medical

evidence and take testimony from a medical expert if needed, reconsider the

medically determinable impairments at step two, reweigh Plaintiff's symptom

allegations, reweigh the medical opinion evidence, reweigh the lay opinion

evidence, and conduct a new sequential analysis.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is not supported by substantial evidence and free of harmful legal

error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as

the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

**REVERSING** and **REMANDING** the matter to the Commissioner of Social

Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED May 12, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 31